## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| LUKE STEWART and LATASHA STEWART, individually, and as guardians and next friends of A.S., a minor child, AMANDA GREEN and BOBBY GREEN II, individually, and as parents and next friends of D.G. and D.G., minor children, JENNIFER WATKINS, individually, and as parent and next friend of B.J. and L.T., minor children, RAPHAEL WATKINS, individually, and as guardian and next friend of B.J. and L.T., minor children, and KALUB MURRAY, individually, | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case  No.  4:16-CIV-00488-JED-FHM |
| v. | ) ) | |
| BROTHERHOOD MUTUAL INSURANCE COMPANY, | ) ) ) | |
| Defendant. | ) ) | |

### PLAINTIFFS' OBJECTION TO DEFENDANT'S MOTION TO EXCLUDE TESTIMONY OF PLAINTIFFS' EXPERT LARRY OWEN [DOC. 93]

Simone Fulmer
OK Bar Number: 17037
Jacob L. Rowe
OK Bar Number: 21797
Andrea R. Rust
OK Bar Number: 30422
James D. Sill
OK Bar Number: 8239
Christopher Bergin
OK Bar Number: 13879
**Attorneys for Plaintiffs**

FULMER SILL, PLCC
P.O. Box 2448
1101 N. Broadway Ave., Suite 102
Oklahoma City, OK 73103
Phone/Fax: (405) 510-0077
sfulmer@fulmersill.com
jrowe@fulmersill.com
arust@fulmersill.com
jsill@fulmersill.com
cbergin@fulmersill.com

**Dated: January 25, 2018**

## <u>TABLE OF CONTENTS</u>

I.    Introduction ................................................................................................. 1

II.   Argument and Authority ............................................................................. 2

    A.    The *Daubert* Standard ............................................................... 2

    B.    The testimony Brotherhood wishes to exclude .......................................... 5

    C.    Major Owen is qualified to testify as an expert witness ........................... 7

    D.    Major Owen's methodology is sound, related to the facts before the
           Court and produced a reliable conclusion ................................................. 8

    E.    Major Owen's testimony will be helpful to the jury ............................... 13

    F.    The precedent presented by Brotherhood in support of its Motion is
           neither binding, nor persuasive ............................................................... 14

    G.    Major wen will not testify that Brotherhood violated the duty of
           good faith and fair dealing ....................................................................... 17

III.  Conclusion .................................................................................................. 19

# TABLE OF AUTHORITIES

## Cases

*Armaneau v. Bridgestone/Firestone North American Tire, LLC*, 2006 WL
    4060665 (D. N.M. 2006) ..................................................................... 16

*Bannister v. State Farm Automobile Ins. Co.*, 692 F.3d 1117,
    1128 (10th Cir. 2012) ....................................................................... 7

*Bitler v. A.O. Smith Corp.,* 400 F.3d 1227, 1232-33 (10th Cir. 2005) ................... 4, 5, 13

*Bright v. Ohio Nat'l Life Assur. Corp.,* 2013 WL 121479 at *2-3 ................................ 3

*Buzzard v. Farmers Ins. Co.,* 824 P.2d 1105, 1109 (Okla. 1991) ....................... 5, 10, 18

*Cooper Tire & Rubber Co. v. Mendez,* 204 S.W.3d 797 (Tex. 2006)........................... 16

*Cruz v. Bridgestone/Firestone North American Tire, LLC*, 388 Fed.Appx.
    803 (10th Cir. 2010) ......................................................................... 16

*Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579,
    113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) ........................................... 3, 4

*Diviero v. Uniroyal Goodrich Tire Co.,* 919 F.Supp. 1353 (D. Ariz, 1996)................. 16

*Dodge v. Cotter Corp.*, 328 F.3d 1212, 1222 (10th Cir. 2003) ......................... 4

*Evans v. Washington Metropolitan Area Transit Auth.*, 674 F.Supp.2d 175
    (D.D.C. 2009)................................................................................ 13

*General Electric v. Joiner*, 522 U.S. 136 (1997)................................................ 4

*Goebel v. Denver and Rio Grande Western Railroad Co.,* 346 F.3d 987
    (10th Cir. 2003) .............................................................................. 4

*Gomez v. Martin Marietta Corp.,* 50 F.3d 1511, 1519 (10th Cir. 1995)........................ 4

*Ho v. Michelin North America, Inc.,* 520 Fed.Appx. 658 (10th Cir. 2013) ................... 15

*Hollander v. Sandoz Pharmaceutical Corp.*, 289 F.3d 1193 (10th Cir. 2002) .............. 11

*Kumho Tire Co., Ltd. V. Carmichael*, 526 U.S. 137, 152 (1999)............................. 4, 15

*Nercessian v. Volkswagen of North America, Inc.*, 2002 WL 1290203
(Mass. 2002) ..................................................................................... 16

*Reed v. Smith & Nephew, Inc.,* 527 F.Supp.2d 1336, 1342 (W.D. Okla. 2007) .............. 3

*Seikel v. Am. Med. Sec. Life Ins. )Co.,* 2007 WL 4864462, at *1
(W.D. Okla. May 11, 2007)................................................................... 3

*Sertz Corp. v. Gaddis_Walker Elec., Inc.*, 125 F.3d 862 (10th Cir. 1985)....................... 4

*TRW Title Ins. Co. v. Security Union Title Ins. Co.*, 887 F.Supp. 1029
(N.D. Ill. 1995) ................................................................................. 13

*Uptegraft v. The Home Ins. Co.,* 662 P.2d 681, 685 (Okla. 1983) ....................... 6, 14, 18

*Vigil v. Michelin North America, Inc.*, 2007 WL 2778233 ..................................... 12, 16

### *Statutes*

Rule 26(a)(2)(B) ......................................................................................... 2, 10

FRE 401 et seq............................................................................................... 5

FRE 702 ..................................................................................................2, 3, 19

### *Other*

Oklahoma Uniform Jury Instruction 22.2 ..........................................................2

COMES now the Plaintiffs and hereby object to *Defendant's Motion to Exclude Testimony of Plaintiffs' Expert Larry Owen*.

## I.    Introduction.

This cases arises from uninsured/underinsured motorist ("UM") claims Plaintiffs filed under an automobile policy of insurance issued by Defendant Brotherhood Mutual Insurance Company ("Brotherhood").  Plaintiffs' UM claims were submitted to Brotherhood after a church van owned by Fresh Fire Outreach Center Church ("the Church") suffered two consecutive tire blow outs, the second of which caused the van to rollover on July 27, 2015, while the Plaintiffs were traveling to a church camp in Branson, Missouri.

Brotherhood learned of a rollover crash on July 28, 2015.  At that time the Church carried an automobile insurance policy with $1 million in liability coverage, $1 million in UM coverage and $5,000 per person in medical payments coverage.

Brotherhood immediately assigned Oklahoma adjuster Todd Carpenter to handle the medical payment claims associated with the crash. Major Carpenter then hired an attorney, Rodney Stewart, to assist in handling any liability claims against the Church or Mr. Barrientos, who was driving the van. Immediately, Attorney Stewart advised the parties' lawyers, as well as the mother of three of the injured children, that neither the Church nor Mr. Barrientos were at fault.

Attorney Stewart aggressively defended the Church and Barrientos.  On November 16, 2016, attorney Andy Campbell, representing seven of the ten injured persons, advised Attorney Stewart that Plaintiffs herein are asserting claims for UM benefits. Mr. Campbell decided to pursue UM claims for his clients because Brotherhood and Attorney Stewart were so aggressively defending the Church and because the path to UM coverage benefits was easier than the path to liability benefits due to the duty of good faith and fair dealing applied to UM claims.

1

For months after placing Brotherhood on notice of Plaintiffs' UM claims, Mr. Campbell waited.  Having received no substantive communication in regard to the UM claims, Mr. Campbell submitted a UM demand packet to Brotherhood on May 15, 2016 in which he demanded payment of Fresh Fire's $1,000,000.00 UM limit.  Having received no response from Brotherhood in relation to their demand, Plaintiffs filed this action on July 25, 2016 alleging Brotherhood violated the duty of good faith and fair dealing owed to them.

To prove Brotherhood violated the duty of good faith and fair dealing Plaintiffs must prove at trial that: (1) Brotherhood was required to pay their UM claims; (2) Brotherhood's failure to do so was unreasonable under the circumstances; (3) Brotherhood did not deal with them fairly and in good faith; and (4) Brotherhood's actions caused them damage[1].  To assist them in proving elements one through three, Plaintiffs have enlisted the assistance of expert witness Major Larry Owen who will offer testimony that the cause of the wreck was the blowout of an unsafe tire used well-past its safe and useful life.  He will also testify that the van's driver failed to slow down adequately before attempting to pull the vehicle onto the shoulder.  Major Owen will also offer testimony as to what steps a reasonable investigation of the wreck causing Plaintiffs' injuries would have entailed.  [Ex. 1 - *Written Report of Expert Witness*].

Understandably, Defendant wishes to exclude this testimony.  However, as will be set forth below, Major Owen is exceedingly qualified to offer this expert testimony and the methods by which he arrived at these conclusions is reliable pursuant to *Daubert* and its progeny.

## II.    Argument and Authority.

### A.    The *Daubert* Standard.

The admissibility of expert testimony is governed by Federal Rule of Evidence 702:

---

[1] *See* Oklahoma Uniform Jury Instruction No. 22.2.

2

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Pursuant to Rule 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579,

113 S.Ct. 2786, 125L.Ed. 2d 469 (1993), the Court has

> a gatekeeper obligation to ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable. Fulfilling the gatekeeper duty requires the judge to **assess the reasoning and methodology underlying the expert's opinion** and determine whether it is both scientifically valid and applicable to a particular set of facts. The Supreme Court has made clear that where [expert] testimony's factual basis, data, principles, methods, or their application are called sufficiently into question ... the trial judge must determine whether the testimony has a reliable basis in the knowledge and experience of [the relevant] discipline.

*Reed v. Smith & Nephew, Inc.*, 527 F. Supp. 2d 1336, 1342 (W.D. Okla. 2007) (internal citation omitted) (emphasis added). A trial court's gatekeeper duty requires two separate inquiries: (1) the witness must be qualified and (2) the witness's opinions must be relevant and reliable. *See Bright v. Ohio Nat'l. Life Assur. Corp.*, 2013 WL 121479 at *2-3, citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141, 152, 119 S.Ct. 1167, 143 L.Ed. 2d 238 (1999).

Although *Daubert* sets out certain factors to apply when considering scientific expert testimony[2], the court has the discretion to determine the applicability of those factors where, as in this case, the testimony is not purely scientific. *Seikel v. Am. Med. Sec. Life Ins. Co.*, 2007 WL 4864462, at *1 (W.D. Okla. May 11, 2007), *citing Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S.

---

[2] According to *Daubert*, the trial court should consider: 1) whether the theory or technique used by the expert can be or has been tested; 2) whether the theory or technique has been subjected to peer review and publication; 3) the known or potential rate of error of the technique or method; and 4) whether the theory or technique has obtained general acceptance within the scientific community. *Daubert*, 509 U.S. at 593-94.

137, 152 (1999). In those cases – including bad faith cases – the *Daubert* factors should be considered only to the extent they are relevant to the subject of the testimony. *Id*. The inquiry required is a flexible determination which does not necessarily mandate application of all factors announced in *Daubert*, and the court has discretion to determine their applicability. *Kumho*, 526 U.S. at 149; *see also Goebel v. Denver and Rio Grande Western Railroad Co.*, 346 F.3d 987 (10th Cir.2003).

Here, the Court must first decide, given the context of the issues presented, whether Major Owen's expected testimony "has a reliable basis in the knowledge and experience of his discipline." *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1232-33 (10th Cir. 2005)(internal quotations omitted). This inquiry involves a preliminary examination of his qualifications and the admissibility of his opinions. *Id*. at 1233. Although this analysis should focus primarily on Major Owen's methodology, it *may* focus on his conclusions if "there is simply too great an analytical gap between the data and the opinion proffered." *General Electric v. Joiner*, 522 U.S. 136 (1997).

The Court's second task in ruling on this motion is to ensure Major Owen's proposed testimony is relevant in that it will aid the trier of fact in determining the issues of this case. *Bitler*, 400 F.3d at 1234. When making this determination, it must be noted that "absolute certainty is not required" of an expert. *Dodge v. Cotter Corp.,* 328 F.3d 1212, 1222 (10th Cir. 2003) (quoting *Gomez v. Martin Marrietta Corp.*, 50 F.3d 1511, 1519 (10th Cir. 1995)). It is appropriate to allow expert testimony that an adverse party claims to be inadequate or incomplete so long as the "inadequacies are known to the defendant in order to thoroughly cross-examine the witness." *Sertz Corp. v. Gaddis_Walker Elec., Inc.,* 125 F.3d 862 (10th Cir. 1997)(citing *Firestone Tire & Rubber Co. v. Pearson,* 769 F.2d 1471, 1482-83 (10th Cir. 1985). The *Daubert* Court also made clear that "[v]igorous cross-examination… [is] the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

Major Owen's testimony is appropriate under the two-pronged *Bitler* analysis.  First, Defendant concedes Major Owen is qualified to testify as an expert on automobile accident investigation and reconstruction, but, it seeks to prevent him from testifying as to the mechanism of the wreck, namely the inevitable failure of the van's decrepit tires.  In doing so, it has attempted to reframe the nature of Major Owen's proposed testimony from that of an accident investigation and reconstruction expert to that of a tire design and manufacturing expert.  There is no allegation in this matter that the tires of the van were defectively designed or manufactured.[3]  Moreover, there is no dispute that the crash that injured Plaintiffs was the result of blowouts sustained by the vans rear tires, both of which were approximately 15 years old.

Plaintiffs' argument is, in fact, the opposite of what Brotherhood has positioned it to be. Plaintiffs contend that the van tires blew out because they were too old to be safe and road-worthy. Thus, the testimony of Major Owen will be that the tires performed *exactly* how they were expected to perform.  Moreover, because Major Owens has spent decades investigating traffic accidents, reconstructing those accidents, and teaching law enforcement officers across this great state to do the same, he is qualified to render this opinion and to set forth the reasonable investigative steps that lead him to the same.

**B.     The testimony Brotherhood wishes to exclude.**

As set forth above, to prevail in this matter,  Plaintiffs must prove: (1) they are entitled to UM benefits under the Brotherhood insurance policy; (2) Brotherhood's actions in handling their

---

[3] Indeed, only Brotherhood has ever used these terms, yet it has no evidence to establish the presence of a "design defect" or "manufacturing defect."  It professes to not even know why the tires failed.  For Brotherhood to continue to use these terms, when it never relied on either of these possibilities in making its decisions in this case, is disingenuous at best.  In fact, Brotherhood, its witnesses, and its attorneys should be prohibited from suggesting the tires on the van were defective under the *Buzzard* analysis as set forth in *Plaintiff's Motions in Limine.*  Further, Brotherhood's continued use of these terms when the issue of "defect" is *not* at issue here would be irrelevant and highly prejudicial to Plaintiffs at trial and should be prohibited.  Fed.R.Ev. 401 et. seq.

claim were unreasonable under the circumstances; (3) Brotherhood's handling of the claim was a violation of the duty of good faith and fair dealing; and (4) Brotherhood's actions damaged them. The testimony of Major Owen is intended to assist Plaintiffs in meeting the first three these elements.  In proving the first element of their cause of action, Plaintiffs must prove they are "legally entitled to recover" UM benefits which "simply mean[s] that the insured[s] must be able to establish fault on the part of the [underinsured] motorist which gives rise to damages and prove the extent of those damages."  *Uptegraft v. The Home Ins. Co.,* 662 P.2d 681, 685 (Okla. 1983).

Major Owen's will testify, consistent with his *Written Report of Expert Testimony* (attached hereto as Exhibit 1), that the National Highway Transportation Safety Administration ("NHTSA") recommends that *all* tires be replaced every 6 years and that tires older than 10 years of age should never be used.  He will further testify that these industry standard time frames exist because tires are subject to oxidation that, over time, causes them to become brittle and lose structural integrity, making them prone to sudden blow outs.  He will further testify that the tires at issue here bore an 11 digit code, as required by the Federal Department of Transportation that allowed him to discover the tire causing the wreck here was approximately 15 years old, well beyond its safe and useful service life.  Major Owen will also testify that the rear tires on the van, "failed because the tires were in use well after their safe and useful life under industry standards.".  [Ex. 1 - *Written Report of Expert Testimony*, p. 2].

Additionally, Plaintiffs submit the testimony of Major Owen in support of the second and third elements of their bad faith case in order to prove that Brotherhood's investigation of Plaintiffs' claims was unreasonable.  To prevail on their unreasonable investigation theory, Plaintiffs must prove that the investigation conducted by Brotherhood was inadequate and that further investigation would have produced additional "relevant information that would have delegitimized

[their] dispute of the claim," that the investigation conducted by Brotherhood intentionally disregarded incontrovertible facts, **or** suggests a sham defense. *Bannister v. State Farm Mutual Automobile Ins. Co.*, 692 F.3d 1117, 1128 (10th Cir. 2012).

Major Owen will testify that a reasonable investigation of the wreck at issue here would have consisted of a number of measures, including an inspection of the scene of the wreck, an inspection of the van and its tires, and conducting interviews with those involved in the wreck as well as the Oklahoma Highway Patrolmen who participated in the investigation of the wreck.  Major Owen will testify that a reasonable investigation of the wreck would have involved ascertaining the age of the vans tires, as well as researching the dangers posed by aged tires.  Further, Major Owen will testify that such reasonable investigation would, more likely than not, have attributed the cause of the wreck to the age of the van's tires and / or the actions of the van's driver.  [Ex. 1 - *Written Report of Expert Testimony*, p. 2].

       **C.**    **Major Owen is qualified to testify as an expert witness.**

Brotherhood's first argument against Major Owen is a challenge to his credentials as a "tire failure analyst."  This attack must fail.  First, Major Owen's testimony is not proffered in this case as a "tire failure analyst."  Moreover, Major Owen's testimony does not bear on whether the tire that caused this crash blew out due to a manufacturing or design defect.[4]  As referenced above, Major Owen's testimony will be that the 15 year old tires Fresh Fire left on the van before embarking on the 5 hour road trip to Branson performed within industry-wide expectations.  They blew out.

---

[4] As will be discussed more thoroughly below, *all* of the authority cited by Brotherhood in support of its motion to exclude Major Owen's testimony bears on the admissibility of expert testimony in product liability actions alleging design and / or manufacturing defects in tire.  This authority is inapposite here.

Apart from recounting Major Owen's educational background, Brotherhood provides no applicable authority or argument in support of its position here.  In fact, it concedes that Major Owen *is* qualified to offer opinion testimony regarding accident reconstruction.

Nevertheless, Major Owen's credentials qualify him to render the expert testimony set forth in his *Written Report*.  Major Owen has been investigating wrecks like the one at issue here as both a law enforcement officer and as a soldier in the United States Army for more than 50 years.  [Ex. 1 - *Written Report of Expert Testimony*, p. 5-6].  In this capacity, he was responsible for the investigation of approximately 1,000 wrecks and later spent years instructing Oklahoma's Highway Patrolmen and other law enforcement officers in the areas Motor Vehicle Dynamics, Accident Reconstruction, Emergency Vehicle Operations, and Federal Motor Carrier Safety Regulations. [Ex. 1 - *Written Report of Expert Testimony*, p. 6].  During this time, Major Owen also received training in many applicable disciplines including commercial motor vehicle investigations, defective tire investigations, injury causation, and human behavior analysis.  [Ex. 1 - *Written Report of Expert Testimony*, p. 6-7].  Since 1974, Major Owen has also reconstructed approximately 3000 wrecks in more than a dozen states and has testified as an accident reconstructionist on approximately 400 occasions in both State and Federal courts on issues ranging from human behavior to the crashworthiness of vehicles, brake systems, and tires.  [Ex. 1 - *Written Report of Expert Testimony*, p. 6, Ex. 2 - *Affidavit of Larry Owen*].  In none of these cases has his testimony ever been excluded on the basis of a *Daubert* challenge.  [Ex. 2 - *Affidavit of Larry Owen*].

**D.**   **Major Owen's methodology is sound, related to the facts before the Court and produced a reliable conclusion.**

In preparing his opinions in this matter, as has been his practice for decades, Major Owen conducted a detailed investigation of the wreck.  He gathered the VIN number for the van at issue and ran a recall report and found there were none.  [Ex. 3 - Deposition of Major Owen, p. 8, l. 4-

14].  He also acquired a copy of the vehicle's Owner's Manual to determine if the same provided any guidance regarding the van's tires.  It did not.  [Ex. 3 - Deposition of Major Owen, p. 8, l. 15-p. 9, l. 14].  Likewise, he reviewed various documents produced by the parties in this action, including: various photographs of the van and the scene of the wreck, purported maintenance records for the van, the Official Oklahoma Traffic Collision Report, the deposition testimony of the Plaintiffs and other witnesses, including Oklahoma Highway Patrol Troopers Cissne and Bennett, and dash camera footage from Trooper Bennett.  [Ex. 1 - *Written Report of Expert Testimony*, p. 3].  In following up on issues he recognized from this testimony, Major Owen contacted the Claremore Wal-Mart to which the van was directed by Trooper Cissne, and learned that they stocked the same sized tires required on the van.  [Ex. 3 - Deposition of Major Owen, p. 27, l. 1-18].

Major Owen also reviewed the scholarly, peer-reviewed articles *Rubber Oxidation and Tire Aging - A Review* by John Baldwin and David Bauer and *The Influence of a Rear Tire Tread Separation on a Vehicle's Stability and Control* by Stephen and Mark Arndt (both of which were admitted as exhibits to Major Owen's deposition and are attached hereto as Exhibits 4 and 5, respectively).  Likewise, Major Owen reviewed assorted literature produced by the NHTSA, including its Field Study on aging tires.  [Ex. 1 - *Written Report of Expert Testimony*, p. 3].  Major Owen also conducted an in-person inspection of the tires where, based on his years of experience and the research he had conducted, he determined the driver's side rear tire suffered a sudden blowout as a result of its unsafe age.  [Ex. 3 - Deposition of Major Owen, p. 15, l. 24-p. 16, l. 3, p. 16, l. 12-p. 17, l. 7 and Ex. 1 - *Written Report of Expert Testimony*, p. 2].

Brotherhood's first attack on the reliability of Major Owen's testimony is that his report contains "no explanation of the application of any methodology" in support of his opinion.  Plaintiffs respectfully disagree.  It is clear from his *Written Report* that Major Owen examined myriad

documents, testimony from several witnesses, the tires from the van, and scholarly research. Having taken these steps, Major Owen then calculated the speed at which the van was traveling at the time of the blow out and determined the driver, Mr. Barrientos, had too abruptly attempt to pull the van to the shoulder, causing it to roll. Major Owen also made clear that his inspection of the vans tires indicated they performed in line with the expectations of 15 year old tires as verified by the peer-reviewed articles he relied upon, Federal Department of Transportation studies, and his experience as an accident reconstructionist in that they suffered a blow out. Accordingly, Major Owen's written report is in compliance with Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure. [Ex. 1 - *Written Report of Expert Testimony*].

Brotherhood also deposed Major Owen on December 19, 2017 and had an opportunity to explore any perceived shortcomings in his method or the reliability of his opinions. However, it did not do so. During the deposition, which lasted only about 2 hours, defense counsel inquired about several aspects of Major Owen's investigation, but spent much of his time reviewing Brotherhood's pending *Motion for Summary Judgment* with Major Owen. Tellingly, Brotherhood has failed to reference *any* testimony from Major Owen's deposition in support of its contention that the same is not reliable.

Moreover, Brotherhood has not produced any testimony, argument, or authority that would tend to show this Court what education or experience *would* qualify an individual to testify that, in failing during interstate travel, 15 year old tires performed as expected and blew out. Likewise, it has failed to provide any expert testimony of its own that would serve to indict Major Owen's credentials, methods, or conclusions.

It is without dispute that, upon receiving notice of their loss, Brotherhood was obligated to perform a full, fair, and prompt investigation on Plaintiff's UM claim. *Buzzard v. Farmers Ins.*

*Co.,* 824 P.2d 1105, 1109 (Okla. 1991). Further, it is undisputed that during its investigation of Plaintiffs' UM claims, Brotherhood attempted to retain a tire expert of its own "to review [the] blown tire," but elected not to do so based upon the representations of Attorney Rodney Stewart.[5] [Ex. 6 - 1/25/17 Deposition of Terri Christner, p. 161, l. 15-18; p. 373, l. 5-7). Had they done so, they would have learned, prior to the filing of this action that the tire blew out due to its advanced age.[6] Had Brotherhood listed the educational and methodological factors they claim are indicative of reliability in their motion, Plaintiffs contend they would have looked very much like the credentials and methods of Major Owen. Listing these factors would have, in essence, established the reasonable investigative steps Brotherhood *should have taken, but did not.*

In an attempt to provide some authority for its attack on the reliability of Major Owen's proffered testimony, Brotherhood, relying on *Hollander v. Sandoz Pharmaceutical Corp.*, 289 F.3d 1193 (10th Cir. 2002), claims that Major Owen's opinions are mere *ipse dixit*. Its argument is misplaced. First, the expertise at issue in *Hollander* was based on scientific expertise as opposed to Major Owen's technical and experiential expertise. The disputed testimony related to whether a drug named Parlodel, when administered as a postpartum lactation suppressant, caused the plaintiff to suffer an intracerebral hemorrhage. There, the science underlying the experts' opinions and the mechanism of plaintiff's injury was hotly contested. The experts' opinions there appeared to

---

[5] It is unfathomable as to how Brotherhood believed Attorney Stewart's analysis was sufficient to determine no further investigation of the van tire was necessary, but takes issue with Major Owen's opinions regarding the cause of the tire's blow out. Major Owen is far more qualified to assess the cause of this wreck, including the basis of the tire's failure, than is Attorney Stewart.

[6] In Volume 1 of her deposition, Ms. Christner, when asked why she believed the tires on the van suffered a blow out, she replied, "[t]hey were older tires." [Ex. 6 - 1/25/17 Deposition of Terri Christner, p. 165, l. 2-3]. In fact, when Ms. Christner was presented for Volume 2 of her deposition on November 15, 2017, she still had not ascertained the cause of the blowouts, but stated that one could "safely assume the tire probably blew because of the age of the tire." [Ex. 7 - 11/15/17 Deposition of Terri Christner, p. 115, l. 18 - p. 116, l. 22].

be *ipse dixit* because they attributed plaintiffs injuries to Parlodel without substantive medical testing of either the plaintiff or the drug and relied almost exclusively on case studies of similar cases.

Major Owen's testimony is categorically different.  First, the issue of causation in this matter is far simpler.  Plaintiffs here are not tasked with proving that a particular design caused a product to fail or rendered a product unreasonably dangerous, rather they are tasked with proving fault for this wreck rests with Fresh Fire and / or the van's driver.  Such testimony cannot come from a scientific expert.  It must come from an expertise grounded in years of technical knowledge and experience gained in reconstructing similar accidents.

Major Owen's testimony is that the wreck was the result of the blow out of an aged tire *and* the driver's negligence.  In reaching his conclusions, Major Owen examined peer-reviewed literature, reviewed the testimony of witnesses (including Trooper Bennett who attributed the crash to dry rotted tires[7]), and inspected the tires himself.  Based on his experiences he synthesized these factors into the opinions at issue in this motion.  As set forth above, Major Owen's conclusions need not be perfect or without reproach.  They only need to be supported by a reliable method, grounded in his unique qualifications.  Plaintiffs have met this burden.

Brotherhood also contends that Major Owen's opinions serve to merely lend weight to Plaintiff's theory of the cause of the wreck and that such a task is an unnecessary intrusion into the duties of the jury.  Again, Brotherhood is incorrect.  Major Owen's unique expertise is necessary here as the universe of accident reconstruction is foreign to the average juror.  Major Owen's training and experience will allow him to explain to the jury how to ascertain the age of a tire, the

---

[7] Interestingly, Brotherhood cites to the case of *Vigil v. Michelin North America, Inc.* 2007 WL 2778233, at *4-5 (W.D. Tex. 2007) for the proposition that a deputy sheriff who had investigated the scene of a wreck could not testify as an expert in "tire manufacturing and design[,]" but allowed him to discuss the presence of the "dry rot" he observed on the tires of one of the vehicles.  Brotherhood's Motion in Limine No. 1 [Doc. 82, p. 2-4] seeks to exclude this very type of testimony from the Oklahoma Highway Patrol Trooper who investigated the wreck at issue here.

dangers of utilizing a 15 year old tire, and the foundational research supporting the need to replace tires every 6 years.  Moreover, he will be able to testify as to what steps he took in order to reach his conclusions.

This case is wholly unlike the case of *Evans v. Washington Metropolitan Area Transit Auth.*, 674 F.Supp.2d 175 (D.D.C. 2009) wherein the court simply prohibited an accident constructionist from "[w]eighing conflicting testimony" as "it is not scientific and, in this case, does not rely on [the expert's] expertise." *Id.* at 180.  Likewise, the facts before the Court are unlike those presented in *TRW Title Ins. Co. v. Security Union Title Ins. Co*, 887 F.Supp. 1029 (N.D. Ill. 1995). The expert testimony at issue there involved monetary damages involved in an action related to a dispute over funds held in escrow.  The court there excluded expert testimony on the issue of damages as "the two dollar amounts that [the expert] would testify about [were] apparently stated in documents that need no interpretation" and that proffered testimony would simply have the expert "add the figures together." *Id.* at 1031.  Here, Major Owen conducted a full investigation of the circumstances of this wreck and should be allowed to recount the details of the same to the jury.

**E.     Major Owen's testimony will be helpful to the jury.**

As set forth above, the second step in the Court's analysis of this *Daubert* challenge is determining whether Major Owen's testimony will "help the trier of fact to understand the evidence or to determine a fact in issue." *See Bitler*, 400 F.3d at 1234 and Fed.R.Civ.P. 702(a).  As set forth above, in proving the first three elements of their case, Plaintiffs must prove by a preponderance of the evidence that (1) they are entitled to UM benefits under the Brotherhood insurance policy, (2) Brotherhood's actions in handling their claim were unreasonable under the circumstances, and (3) Brotherhood's actions violated the duty of good faith and fair dealing.  Major

Owens testimony will assist the jury in determining whether Plaintiffs are entitled to recover UM benefits.  Element (1) requires that Plaintiffs prove they are "legally entitled to recover" UM benefits which "simply mean[s] that the insured[s] must be able to establish fault on the part of the [underinsured] motorist which gives rise to damages and prove the extent of those damages." *Uptegraft v. The Home Ins. Co.* 662, P.2d 681, 685 (Okla. 1983).  The testimony of Major Owen is that fault for this crash is attributed to the van's driver, Mr. Barrientos' failure to sufficiently slow the vehicle before moving it to the shoulder, and to Fresh Fire for failing to properly maintain its church van.

These opinions are outside the knowledge base of most jurors.  Given Major Owen's training and experience, he understands where to locate the information contained on every tire in order to ascertaining its age.  Moreover, Major Owen is familiar with the peer-reviewed literature and industry standards that establish the safe and useful life of tires.  Additionally, most jurors would be unaware of the myriad steps that ought to be taken in the investigation of an automobile collision or how to draw conclusions from the results of such an investigation.  Given that Major Owen has spent a considerable amount of his life training law enforcement officers on how to accomplish this task, there is no question he will do an exemplary job of conveying this information to the jury.

> **F.      The precedent presented by Brotherhood in support of its motion is neither binding, nor persuasive.**

Brotherhood concludes its contention that Major Owen's "tire failure analysis" should be excluded by citing to various cases, most of which come from jurisdictions outside of the 10th Circuit Court of Appeals, that discuss the admission of expert testimony in *product liability cases* involving tires.  This is not a case involving a defective product, rather a product that performed as expected.  In this way, these cases are factually distinguishable.  However, even though the

interpretations of *Daubert* and its progeny within these cases are meaningful, they are factually distinguishable on other grounds.

First, the Court's holding in *Kumho Tire Co. v. Carmichael*, 526 US. 137 (1999) is distinguishable from the case at bar. There, the expert testimony at issue involved a novel theory as to the cause of tire tread separation. The expert there had created a set of four physical symptoms of tire abuse and determined that if a tire separated and there were not 2 or more symptoms of abuse present, the cause of the tread separation *must* be defective manufacture or design. *Id.* at 143-45. The issue for the Supreme Court involved the reliability of the expert's methodology. It found that his 2 step method was not supported by *any* of the *Daubert* factors and that neither party presented any alternative factors that would militate in favor of reliability. *Id.* at 157.

Here, Major Owen is not relying upon a novel theory of tread separation. He is utilizing a well-respected method of accident investigation and reconstruction. Moreover, in doing so in this case, he has relied upon peer-reviewed data related to the failure rate of aging tires, governmental data related to such failures, tire industry standards, and his own experience. Major Owen is not relying upon a new methodology to determine a defect in the tire at issue here, rather he is relying on time-tested methods and data to show the tire performed as expected.[8]

Likewise, the facts of *Ho v. Michelin North America, Inc.*, 520 Fed.Appx. 658 (10th Cir. 2013), do not apply here either. There, the 10th Circuit Court of Appeals upheld the exclusion of an expert's opinion that a tire involved in a wreck was defectively designed and manufactured because it was not outfitted with a nylon cap ply. *Id.* at 661-662. Unfortunately for the expert, his

---

[8] It is worth noting that, the methods of Major Owen's investigations are so thorough that defense counsel, Durbin Larimore & Bialick, utilize Major Owen as an accident reconstructionist on many of the cases they are currently litigating. [Ex. 2 - Affidavit of Larry Owen]. Also noteworthy is the fact that materials produced by Brotherhood and distributed to its insureds warn of the "New Threat Posed by Old Tires" and, in part, confirm Major Owen's methods and conclusions. [*See* Ex. 8 - "New Threat Posed by Old Tires"].

deposition testimony indicated he had no experience in the design of tires and his new theory of liability was unsupported by peer-reviewed literature and was contrary to the prevailing scientific thought. *Id.* at 661. In these ways, his testimony was based upon "generalized experience" only. Such is not the case with Major Owen's testimony which is based on decades of successful accident reconstruction practice, peer-reviewed literature, governmental data sources, and a personal inspection of the tire responsible for the roll over.

As was the case in *Ho*, the Court in *Cruz v. Bridgestone/Firestone North American Tire, LLC* 388 Fed.Appx. 803 (10th Cir. 2010)[9] excluded an expert's proposed testimony that the lack of a nylon cap ply was a design and / or manufacturing defect resulting in tread separation. As noted by Brotherhood, the expert's testimony was excluded as no testing had been conducted, no peer-reviewed literature or empirical data supported his conclusions, and there was no support for his theory within the tire industry. Again, Major Owen's testimony differs in that he conducted an inspection of the tire at issue here and based his conclusions on peer-reviewed literature, governmental data sources, and standards accepted within the tire industry.

The same distinguishing characteristics within *Kumho*, *Ho*, and *Cruz* are found within the remaining cases Brotherhood uses in support of its argument against Major Owen. All expert testimony excluded in *Armaneau v. Bridgestone/Firestone North American Tire, LLC*, 2006 WL 4060665 (D. N.M. 2006), *Diviero v. Uniroyal Goodrich Tire Co.*, 919 F.Supp. 1353 (D. Ariz. 1996), *Nercessian v. Volkswagen of North America, Inc.*, 2002 WL 1290203 (Mass. 2002), *Cooper Tire & Rubber Co. v. Mendez*, 204 S.W.3d 797 (Tex. 2006), and *Vigil v. Michelin North America, Inc.* 2007 WL 2778233 involve expert testimony excluded from product liability actions based on reliability concerns.

---

[9] The *Cruz* opinion was not selected for publication. A copy of the same is attached as Ex. 9 for the Court's review.

As has been discussed *ad nauseam* above, the case before the Court does not involve an allegedly defective product, rather a product that performed in accordance with industry standards. A tire should be replaced within 6 years of the date of its manufacture and, given the properties of decaying aged tires, become more dangerous as time progresses.  The tires on the van at issue here were approximately 15 years old, evidenced visual signs of dry rot, and blew out after driving on the interstate highway.  These standards and tire performance expectations have been set forth in peer-reviewed literature and governmental research which Major Owen incorporated with his years of experience to formulate his conclusions here.

Major Owen's education, experience, and method have produced a reliable conclusion.  His investigation was guided by years as a successful and prolific accident reconstructionist and his conclusions are informed by well-established peer-reviewed literature and governmental research.  Moreover, Brotherhood's attacks as to both Major Owen's credentials and methods are largely superficial.  They are conclusory in nature and no appropriate authority has been cited which would lend their arguments credit.  Finally, Brotherhood has not specifically addressed what, if anything, would serve to cure the alleged deficiencies of Major Owen's qualifications or methods.  This is likely because Major Owen is well qualified to offer *all* of the opinions set forth in his *Written Report* and any detailed listing of Major Owen's shortcomings here would easily read as a list of "What We (Brotherhood) Did Wrong."

Defendant's Motion should thus be denied.

**G.     Major Owen will not testify that Brotherhood violated the duty of good faith and fair dealing.**

Brotherhood's final argument in support of its request to exclude the testimony of Major Owen involves its contention that Major Owen intends to offer testimony related to insurance claims handling.  He does not intend to do so.  As discussed above, Major Owen's expertise lies

17

in the realm of automobile accident investigation and reconstruction.  Major Owen will testify that his years of experience in the investigation and reconstruction of automobile wrecks uniquely qualifies him to discuss what steps should be taken in a reasonable and timely investigation of such crashes.  The majority of the automobile accidents he has investigated and or investigated have actually been in the service of law firms and insurance company clients attempting to determine who was at fault for a wreck.  [Ex. 1 - *Written Report*, p. 7].  Brotherhood concedes he is qualified to render testimony related to "the investigation and reconstruction of the July 27, 2015" wreck [Doc. 93, p. 2], presumably because he has been retained on many occasions as an accident reconstructionist by DLB.  [Ex. 2 - Affidavit of Larry Owen].

Plaintiffs do not now and have never contended that this testimony is designed to set forth insurance industry standards.  However, it is undisputed that Brotherhood was obligated to perform a reasonable and appropriate investigation upon receiving notice of Plaintiffs' losses.  *Buzzard v. Farmers Ins. Co.,* 824 P.2d 1105, 1109 (Okla. 1991).  Such an investigation in a UM case necessarily involves a determination of who, if anyone, is responsible for the crash causing the wreck.  *Uptegraft v. The Home Ins. Co.,* 662 P.2d 681, 685 (Okla. 1983).  Given Major Owen's training and experience, he is imminently qualified to set forth what a reasonable investigation of the cause of this accident would entail and who, if anyone, is responsible for the carnage it wrought upon Plaintiffs.

This valuable testimony should not be excluded simply because Major Owen is testifying in a case involving allegations of an insurers violation of the duty of good faith and fair dealing.  Nor should it be excluded because Major Owen has never been an employee of an insurance company.  Neither of these things bear on whether the investigation of an automobile accident requires

18

technical or specialized knowledge or whether on seeking to proffer such testimony is appropriately qualified to do so as contemplated by Fed.R.Civ.P. 702.

### III.    Conclusion.

The expert testimony of Plaintiffs' accident reconstruction expert should not be excluded. Major Owen's testimony will set forth what would have constituted a reasonable investigation of the automobile crash underlying Plaintiffs' denied UM claims.  Further, Mr. Owen will testify that he conducted such an investigation here and concluded that the crash began when the 15 year old tire on the rear driver's side of the van blew out as a result of its advanced age.  Further, he will testify that the driver of the van failed to adequately reduce the van's speed before attempting to pull the van onto the shoulder.  Major Owen is qualified to render this expert testimony by virtue of his more than 50 years of experience in investigating and reconstructing automobile accidents and teaching others how to do the same.  Further, the methods underlying Major Owen's opinions are reliable as they are supported by peer-reviewed literature, governmental research studies, and tire industry standards, all of which Major Owen must be familiar with in the analysis of automobile wrecks.  Moreover, in attempting to exclude Major Owen's testimony, Brotherhood has provided no competing expert testimony or authoritative text indicating what measures would cure the alleged defects in Major Owen's credentials or methods.

Accordingly, *Defendant's Motion to Exclude Testimony of Plaintiffs' Expert Larry Owen* should be denied.

Respectfully submitted,

/s/ Jacob L. Rowe
Simone Gosnell Fulmer
OK Bar Number: 17037
Jacob L. Rowe
OK Bar Number: 21797
Andrea R. Rust
OK Bar Number: 30422
James D. Sill
OK Bar Number: 8239
Christopher Bergin
OK Bar Number: 13879
**Attorneys for Plaintiffs**
FULMER SILL PLLC
P.O. Box 2448
Oklahoma City, OK  73101
Phone/Fax:  (405) 510-0077
sfulmer@fulmersill.com
jrowe@fulmersill.com
arust@fulmersill.com
jsill@fulmersill.com
cbergin@fulmersill.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of January, 2018, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing.  Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Glen Mullins
David B. Donchin
DURBIN, LARIMORE & BIALICK
920 North Harvey
Oklahoma City, OK 73102-2610

/s/ Jacob L. Rowe